# UNITED STATES *v.* POST.

## APPEAL FROM THE COURT OF CLAIMS.

No. 1061. Submitted March 6, 1893.—Decided March 13, 1893.

Under the act of May 24, 1888, c. 308, (25 Stat. 157,) which provides "that hereafter eight hours shall constitute a day's work for letter-carriers in cities or postal districts connected therewith, for which they shall receive the same pay as is now paid as for a day's work of a greater number of hours. If any letter-carrier is employed a greater number of hours per day than eight he shall be paid extra for the same in proportion to the salary now fixed by law," reference is not had only to letter-carrier service, and a claimant is not required to show not only that he has performed more than eight hours of service in a day, but also that such eight hours of service related exclusively to the free distribution and collection of mail matter, and that the extra service for which he claims compensation was of the same character.

Under § 647 of the Regulations of the Post-office Department, of 1887, and
the act of 1888, a claim for extra service and pay may include an em-
ployment of the letter-carrier not only in the delivery and collection of
mail matter, but also in the post-office, during the intervals between his
trips, in such manner as the postmaster directs, but not as a clerk.

Such extra service is not an extra service within the meaning of §§ 1764
and 1765 of the Revised Statutes, payment for which is not authorized
by law.

THE case is stated in the opinion.

*Mr. Henry M. Foote* and *Mr. Attorney General* for appel-
lant.

*Mr. Charles King*, *Mr. George A. King* and *Mr. William
B. King* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit brought in the Court of Claims, by Aaron S.
Post against the United States, by an original petition filed
March 26, 1891. A traverse of the petition was filed May 23,
1891, and an amended petition January 11, 1892. In the
latter it is set forth that the claimant was, from May 24, 1888,
to December 31, 1889, a letter-carrier in the post office at the
city of Salt Lake City, in the Territory of Utah, of the class
entitled to a salary of $850 a year; that, during that period,
he was, from time to time, actually and necessarily employed
in excess of eight hours a day in the performance of the duties
assigned to him as such carrier, aggregating an excess of a
specified number of hours; that by the act of Congress of May
24, 1888, c. 308, (25 Stat. 157,) entitled "An act to limit the
hours that letter-carriers in cities shall be employed per day,"
he became entitled to extra pay for all the time during which
he was so employed in excess of eight hours a day, and that he
had applied to the Post Office Department for payment of the
same, and it had not been paid, and he claimed judgment for
a specified amount and costs. A traverse of the amended peti-
tion was filed February 21, 1892. Eight other cases were
before the Court of Claims and tried at the same time, with

petitions in the same form and claiming various amounts, the claimants serving for various periods, and their classes and salaries being various.

The Court of Claims found that Post was a letter-carrier at the post-office at Salt Lake City, between May 24, 1888, and December 21, 1889, of the second class, at a salary of $850 a year. The other findings were as follows:

"2. During their aforesaid terms of service said claimants were actually employed in the performance of their duties more than eight hours a day, the excess over such eight hours being shown in the following finding:

"3. The manner, time and nature of their employment was generally as follows:

"They were required to report for duty at the post-office at 7 A.M. From 7 to 7.30 they were employed within the post-office in the distribution of mail matter, that is to say, in taking letters and papers from newly-arrived pouches, assorting them, and placing them in the boxes for box and general delivery.

"From 7.30 to 8 they were severally engaged in arranging their own mail matter for carrier delivery by streets and numbers, and where the residence of a person was not expressed in the direction of a letter and was not known or remembered, in looking it up in the directory.

"From 8 to 11 they were occupied on their routes in delivering and collecting mail matter.

"From 11 to 11.30 they were engaged within the post-office building in making returns of persons not found and other things connected with their route delivery.

"From 11.30 to 1 they were employed within the post-office in the general distribution of mail matter.

"From 1 to 2 they were absent and off duty.

"From 2 to 3.30 they were again employed on the post-office work of distributing general mail matter.

"From 3.30 to 4 they were severally engaged in arranging their own mail matter for delivery.

"From 4 to 6 they were again occupied on their routes in delivering and collecting mail matter and in making their returns.

"From 6 to 7 they were again absent and off duty.

"From 7 to 8 they were again employed on the post-office work of distributing general mail matter.

"The above statement represents an ordinary or average day's employment. The time of going out and the time of being out on the routes in fact varied with the size of the mail, as did the time of their being relieved from duty at night. But their reporting for duty at 7 in the morning, at 2 in the afternoon, and at 7 in the evening was constant.

"The above statement does not apply to Sundays. On Sundays the carriers made no deliveries. They were employed, however, in the office; but the time of employment did not exceed eight hours. During the time covered by this claim there were 9 carriers and 3 clerks employed in said post-office.

"4. The carriers, by one of their number, remonstrated against the performance of work not connected with their duties as carriers. The postmaster, however, held that 'under the regulations the postmaster could use them in that service.' He therefore required them to perform it.

"5. During the time embraced within the present claims the following regulations of the Post Office Department were in force, all under the general title, 'Free-Delivery Service.' Postal Laws and Regulations, 1887, pp. 259, 261, 266, 268, 269:

"'SEC. 628. Postmasters to supervise carrier service. — Postmasters will supervise their carrier service, and are specially enjoined —

"'1. To see that superintendents, carriers and clerks connected with this service are fully informed as to their responsibilities and duties. . . .

"'3. To frequently visit the stations and see that the regulations are there observed and proper order and discipline maintained.

"'4. To issue all necessary orders and instructions necessary to carry out the regulations and promote the efficiency of the service.

"'5. To reprimand the carriers for irregularities or report them for removal to the Superintendent of Free Delivery, as the nature of the offence may require. See section 642.

" 'SEC. 642. Reprimand, suspension and removal. — The due performance of their duty by carriers, and the observance of law, regulations and orders prescribed for their conduct, will be enforced by reprimand for slight offences; by suspension with loss of pay for more serious ones, not, however, to exceed thirty days; and by suspension and recommendations for removal for grave offences, or persistent disregard of the rules herein prescribed, or of the orders of the postmaster not inconsistent herewith. In all other cases of recommendation for removal, carriers should not be suspended, but postmasters should await the action of the Department.'

" All the following are under the sub-title, ' General Duties of Carriers.'

" 'SEC. 647. *Duties generally.* — Carriers shall be employed in the delivery and collection of mail matter, and during the intervals between their trips may be employed in the post office in such manner as the postmaster may direct, but not as clerks.

" 'The delivery and collection by them must be frequently tested at irregular intervals, to determine their efficiency.

" 'SEC. 648. *Delivery of matter.* — The mails must be assorted and the carriers started on their first daily trip as early as practicable. They must proceed to their routes with expedition and by the most direct way. A schedule of the order of delivery of each route should be made in a legible hand by names of streets and numbers of houses, and the mail delivered according to such schedule. Mail matter directed to box numbers must be delivered through the boxes. Mail matter addressed to street and number must be delivered by carriers unless otherwise directed. Mail matter addressed neither to a box-holder nor to a street and number must be delivered by carrier if its address is known or can be ascertained from the city directory ; otherwise, at the general delivery.

" 'SEC. 649. *Care in delivery of mail.* — Carriers will exercise great care in the delivery of mail to the persons for whom it is intended, or to some one known to them to be authorized to receive it. They will, in case of doubt, make respectful inquiry with the view to ascertain the owner. Failing in this,

they will return the mail to the office, to be disposed of as the postmaster may direct.'

" ' Sec. 651. *Directory to be used to ascertain addresses.* — Where a directory is published it must be used when necessary to ascertain the address of persons to whom letters are directed, and it should also be used in the case of transient newspapers and other matter of the third and fourth classes, where the error in or omission of street address is evidently the result of ignorance or inadvertence; but when circulars, printed postal cards, or other matter, except letters, shall arrive at any post office in large quantities, apparently all sent by the same person or firm, and from which the street addresses have been purposely omitted, the directory need not be used to supply such omission, and all of such circulars, etc., which cannot readily be delivered through boxes or by carriers, shall be sent to the general delivery to await call.'

" 6. In the case of Aaron S. Post, the claimant, between the 24th day of May, 1888, and the 31st day of December, 1889, was employed by order of the postmaster in excess of eight hours a day, as follows:

" Before 7 A. M., the regular hour when the carriers reported for duty, he arrived at the office and opened the eastern mail, which came at about 5 in the morning, in order to prepare the same for the southern mail. This was done so that it would not have to lie over twenty-four hours. The time thus employed was two hundred and forty-six and one-half hours.

" During intervals between 7 A. M., when carriers reported for duty, and 6 P. M., when their work as carriers ended, he was employed in the office in opening the mail, stamping it, and distributing the same as hereinbefore stated, in excess of eight hours, nine hundred and eighty-six hours.

" After his last trip and his returns as carrier were made — *i. e.*, after 7 P. M. — he was employed on the post office work of distributing general mail matter in the office four hundred ninety-three hours."

On such findings of fact, the court found as a conclusion of law that Post was entitled to recover for 1725½ hours of extra work, amounting, at the rate of 29.1 cents per hour, to $502.12.

The opinion of the court in the nine cases, including that of Post, is found in 27 Ct. Cl. 244. A judgment was entered in favor of Post, on March 10, 1892, for $502.12, from which judgment the United States appealed to this court.

The act of May 24, 1888, reads as follows: "That hereafter eight hours shall constitute a day's work for letter-carriers in cities or postal districts connected therewith, for which they shall receive the same pay as is now paid as for a day's work of a greater number of hours. If any letter-carrier is employed a greater number of hours per day than eight he shall be paid extra for the same in proportion to the salary now fixed by law."

The contention of the United States is, that the statute has reference only to letter-carrier service, and that the claimant, to bring himself within its provisions, must show not only that he has performed more than eight hours of service in a day, but also that such eight hours of service related exclusively to the free distribution and collection of mail matter, and that the extra service for which he claims compensation was of the same character.

In this connection, reference is made to §§ 1764 and 1765 of the Revised Statutes. Section 1764 provides as follows: "No allowance or compensation shall be made to any officer or clerk, by reason of the discharge of duties which belong to any other officer or clerk in the same or any other Department: and no allowance or compensation shall be made for any extra services whatever, which any officer or clerk may be required to perform, unless expressly authorized by law." Section 1765 provides as follows: "No officer in any branch of the public service, or any other person whose salary, pay or emoluments are fixed by law or regulation, shall receive any additional pay, extra allowance or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation."

Referring to § 647 of the Postal Laws and Regulations of

1887, which were in force during the time embraced within the claim in question, under the head of "Free-Delivery Service," (and which § 647 is set forth in finding 5 of the Court of Claims,) under the sub-title "General Duties of Carriers," it providing as follows: "Carriers shall be employed in the delivery and collection of mail matter, and, during the intervals between their trips, may be employed in the post office in such manner as the postmaster may direct, but not as clerks," it is contended for the United States that the duties of letter-carriers are a necessary incident to the creation of the free-delivery service; that the statute necessarily defines their services to be a distribution and collection of mail, and such other duties as are necessarily incident thereto, such as receiving the mail allotted to them by clerks in the post office, arranging it for distribution, and making a proper disposition of it, when not delivered, upon their return to the post office; and that any other service which a carrier may perform is not contemplated by the act of May 24, 1888, and is an extra service within the meaning of §§ 1764 and 1765 of the Revised Statutes, payment for which is not authorized by law.

For the claimant, it is contended that, under § 647 of the regulations of the Department, as set forth in finding 5 of the Court of Claims, the extra service for which the claim is made was an employment of the letter-carrier, not only in the delivery and collection of mail matter, but also in the post office, during the intervals between his trips, in such manner as the postmaster directed, but not as a clerk.

It is not stated in the findings that the claimant was so employed as a clerk, nor does it appear what the duties of a clerk in the post office in question were, but merely that, during the time covered by the claim, there were nine carriers and three clerks employed in that post office. It is also found, by finding 4, that the carriers remonstrated against the performance of work not connected with their duties as carriers; but that the postmaster held that, under the regulations, he could use them in that service, and therefore required them to perform it. This, in view of the provision of § 647 of the

regulations, is substantially a finding that they were not employed as clerks.

The whole contention on the part of the United States amounts to this, that the Court of Claims has substantially found that none of the extra work for which compensation is claimed was incident to the general duties of the claimant as a letter-carrier, and that the statute in regard to extra service relates exclusively to that which is connected with the general duties of the claimant as a letter-carrier, and not to compensation for extra service, when he is not employed for eight hours a day in the performance of his general duties as a letter-carrier.

The statute of 1888 provides that eight hours shall constitute a day's work "for letter-carriers" in cities or postal districts connected therewith. It does not state what duties the letter-carriers shall perform during such day's work, but merely that they shall receive for such day's work of eight hours the same pay that was then paid for a day's work of a greater number of hours. It further provides that, if a letter-carrier is employed a greater number of hours per day than eight, he shall be paid extra for such greater number of hours in proportion to the salary fixed by law for his compensation. This extra pay is given to him by the statute distinctly for his being employed a greater number of hours per day than eight. The statute does not say how he must be employed, or of what such employment is to consist. It is necessary only that he should be a letter-carrier, and be lawfully employed in work that is not inconsistent with his general business under his employment as a letter-carrier. The employment authorized by § 647 of the regulations is defined to be an employment in the post office in such manner as the postmaster may direct, during the intervals between the carrier's trips in delivering and collecting mail matter, provided that he be not employed in the post office as a clerk therein.

The Court of Claims, in its opinion, arrived at the following conclusions: (1) That the letter-carriers were entitled to recover, not only for all work done by them on the street, in delivering and collecting mail matter, but also for all work

done in the post office, in receiving and arranging the letters of their routes; (2) that, as to the distribution of mail matter for the boxes and general delivery, as found in finding 3, during the times intervening between one trip and another in the same day, the regulations of the Department, set forth in finding 5, could properly be construed as permitting such services; and (3) that, as to the services of the same character rendered after the termination of the last trip for the day of the carrier in delivering and collecting mail matter, they were services fairly within the power of the postmaster to prescribe.

We are of opinion that, in respect of all such services, the letter-carrier, if employed therein a greater number of hours than eight per day, was entitled to be paid extra. To hold otherwise, would be to say that the carrier was employed contrary to the regulations of the Department, when it clearly appears that he was employed in accordance with such regulations. The statute was manifestly one for the benefit of the carriers, and it does not lie in the mouth of the government to contend that the employment in question was not extra service, and to be paid for as such, when it appears that the United States, in accordance with the regulations of the Post Office Department, actually employed the letter-carriers the extra number of hours per day, and it is not found that they were so employed as clerks. The postmaster was the agent of the United States to direct the employment, and if the letter-carriers had not obeyed the orders of the postmaster, they could have been dismissed. They did not lose their legal rights under the statute by obeying such orders.

*Judgment affirmed.*

MR. JUSTICE JACKSON took no part in the decision of this case.