Peelle, J.,
delivered the opinion of the court:
. The claimant, a letter carrier in the city of New York, seeks to recover (1) for time employed on active duty as a delivery carrier in excess of eight hours a day, and (2) for intervals of time between trips as a collecting' carrier, during which no duty was required except one-eighth of an hour each day during the months of November, December, January, February, and March. The claim arises, if at all, under the Act May 24, 1888 (1 Supp. R. S., 587), which reads:
liBe it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That hereafter eight hours shall constitute a day’s work for letter carriers in cities or postal districts connected therewith, for which they shall receive the same pay as is now paid as for a day’s work of a greater number of hours. If any letter carrier is employed a greater number of hours per day than eight, he shall be paid extra for the same in proportion to the salary now fixed by law.”
For the time employed on active duty in excess of eight hours a day, whether as delivery or collecting carrier, the claimant is entitled to recover under the act as construed in the case of The United States v. Post (148 U. S., 124).
Prior to the claimant’s appointment as a letter'carrier a schedule of tours, showing the hours of service required in collecting the mails, was promulgated by the postmaster, as follows:

Also prior to the claimant’s appointment, to wit, February 19,1891, a circular had been issued by the Postmaster-General, of which the following is an extract:
“The time necessarily consumed in the performance of the service between ‘report for duty’and ‘endof duty’isthe actual time to be allowed, and the interim between deliveries is the carriers’ oion time, and can not in any case be charged against the United States.”
*238 Of the foregoing schedules and the circular the claimant, with other carriers, was advised at the time of bis appointment, and he in common with other carriers knew and understood that the schedule so framed was for the purpose of complying with the “eight-hour law,” and that the intervals of time between the tours designated for collecting the mails were to be “ carriers’ own time.”
These intervals, long and short, are known in the postal service as “long swings” and “short swings.” No claim is made for the “long swings.”
The controverted question presented, therefore, is, Are the defendants liable for the intervals of one-half hour, known as “ short swings,” between the tours from 6 to 6.30 a. m. and from 7.30 to 8 p. in., during which time no duty was required of the claimant, except as before stated, and no service was rendered by him unless the voluntary waiting for his next trip be so considered ?
The long and short intervals of time between tours, as shown on the foregoing schedules, are as follows:

The schedules, it will be observed, are framed upon the basis of one hour for each trip, so that a carrier will thereby be enabled to complete his “ day’s work” in eight trips, as under the act eight hours “ constitutes a day’s work,” for which their salaries are paid, and then, in addition to that, the act provides “if any letter carrier is employed a greater number of hours per day than eight, he shall be paid extra for the same in proportion to the salary now fixed by law.”
The decision of the question involved therefore turns on the construction to be given to the word “ employed ” in the paragraph of the act just quoted.
As stated, no claim is made for the long intervals or swings between tours, and for the reason, admitted in argument, that such intervals of time, may be used by the claimant for his own benefit, thereby conceding, and we think properly, that the service of a letter carrier is not necessarily for eight consecutive hours.
*239 This view is in harmony with the legislative history of the act, for when the bill was before the House of Representatives it was, on the recommendation of the committee reporting it, amended by striking out the word “consecutive,” as it appeared in the original bill. (Rep. No. 265, and Cong. Rec., Mar. 20, 1888, 1st sess. 50th Cong., p. 2274.)
However, we think the clear and unmistakable meaning of the act, independently of the manifest intention of Congress by the amendment is, that eight hours of service during the. day “shall constitute a day’s work for letter carriers;” not that a letter carrier shall be on duty four hours one day and four hours the next or some other day “to constitute a day’s work;” but that during each day “eight hours shall constitute a day’s work;” hence if the intervals of time between tours, or the time before the first or after the last tour, should be essential to make up the eight hours, the claimant and his class would be entitled to have it included whether actively engaged during such time or not, as under the act the salary of a carrier, though annual, is based ou eight hours for “ a day’s work,” instead of, as theretofore, on “ a day’s work of a greater number of hours.” Consequently during eight hours each day, consecutive or otherwise, as the postal authorities may determine, a carrier is presumed, in the absence of any showing to the contrary, to be on duty. (United States v. Gates, 148 U. S., 134, 136, affirming decision of this court, 27 C. Cls. R., 244.)
Except as to the duration of time between tours, the same conditions existed upon which to predicate an “employment” for the long as for the short individuals, but it is conceded that the long intervals between tours were of such convenient duration that the claimant might have used the same for his own benefit.
In respect to the long intervals of time, therefore, it can not be said that “ they also serve who only stand and wait.”
They were at liberty to go whithersoever theyliked, as during such intervals the Government neither employed nor exacted any duty of them.
During the short intervals for which extra pay is sought no active or other duty was required except during the months of November, December, January, February, and. March, when *240 tbe claimant, at the request of the chief clerk of the station, ‘‘frequently faced up papers during the swing on the early tour,” as set forth in the findings, and for which defendants, concede he is entitled to be paid.
When on duty letter carriers are required to wear the uniform dress prescribed by the Postmaster-General under Bevised Statutes, section 3867, and so long as they are “connected with the letter-carrier branch of the postal service,” they are free to wear the same, not that they must be on active duty to-entitle them to wear it, but that they must be so connected with the postal service mentioned that duty may be required of them by the postal authorities.
There is no law or regulation of which we are aware requiring carriers to either wear or lay off their uniforms during the long or the short intervals between tours when not employed. Hence the wearing of their uniforms during such intervals of time is optional with them, in the exercise of which they may or may not subject themselves to the restrictions imposed on carriers in uniform by official regulations.
During the short intervals the claimant, though never required to do so, wore his uniform and remained at the station, but he contends that he did so because the shortness of the time was such that he could not utilize the same for his own benefit.
This is upon the assumption that to utilize such time for his own benefit he must lay off his uniform and go away from the station, but as no objection was made to his wearing his uniform and remaining at the station he could, if so inclined, have occupied the time in various useful ways.
■ But assuming that the claimant’s theory is correct — i. e., that the intervals of one-half hour between tours were too short to be used by him for his own benefit — can the the court thereby conclude as a matter of law that the claimant was “employed” during such intervals within the meaning of the act authorizing employment?
Certainly there is no law which authorizes the Government or its officers to “employ” a person to perform no service. Every law which authorizes the appointment or employment of persons in the public service presupposes some duty or service to be performed thereby. True, at times during such *241 persons no duty or service to perform, but we are aware of no law which, authorizes compensation for such idle time beyond that which is necessarily covered by their regular pay, salary, or compensation fixed by law.
Although eight hours “ constitute a day’s work for letter carriers,” and schedules, as in this case, are arranged so as to secure such service as near as may be, yet in consequence of the irregular and changing conditions of the mails it will necessarily happen that carriers, in the regular discharge of their duties, will complete their tours in less time than the schedules provide, but any idle time resulting in this respect is covered by their regular salaries.
To entitle them to extra pay for “ a greater number of hours per day than eight,” they must be “ employed; ” that is to say, they should be employed as letter carriers in some work consistent with their duties as such.
In the construction of the act under which extra pay is sought the Supreme Court, in the case of United States v. Post (148 U. S., 124, 132), say:
“The statute of 1888 provides that eight hours shall constitute a day’s work ‘for letter carriers’ in cities or postal districts connected therewith. It does not state what duties the letter carriers shall perform during such day’s work, but merely that they shall receive for such day’s work of eight hours the same pay that was then paid for a day’s work of a greater number of hours. It further provides that if a letter carrier is employed a greater number of hours per day than eight he shall be paid extra for such greater number of hours in proportion to the salary fixed by law for his compensation. This extra pay is given to him by the statute distinctly for his being employed a greater number of hours per day than eight. The statute does not say how he must be employed, or of what such employment is to consist. It is necessary only that he should be a letter carrier, and be lawfully employed in work that is not inconsistent with his general business under his employment as a letter carrier. The employment authorized by section 647 of the regulations is defined to be an employment in the post-office in such manner as the postmaster may direct, during the intervals between the carrier’s trips in delivering and collecting mail matter, provided that he be not employed in the post-office as a clerk therein.”
*242 There, it will be observed, the court say:
“This extra pay is given to him by the statute distinctly for his being employed a greater number of hours per day than eight.”
In referring to this decision the counsel for claimant says:
“Employment must be accepted, in the light of this decision, as the test of the right to extra pay. If ‘employed’ means ‘engaged in active postal duties,’the intervals can not be considered time employed; if it means ‘occupied’ to the exclusion of other aifairs, then these intervals are ‘employed.’”
No presumption can arise in favor of a carrier being on duty “a greater number of hours per day than eight,” as extra pay for such time is based on employment, and such employment can not arise by implication without the actual rendition of some necessary postal service.
This view is in harmony with the language of the court in the case, cited by claimant’s counsel, of United States v. Morris (14 Pet., 464, 475), where the court say:
“ ‘ To be employed ’ in anything means not only the act of doing it, but also to be engaged to do it; to be under contract or orders to do it. And this is not only the ordinary meaning of the word, but it has frequently been used in that sense in other acts of Congress.”
Counsel for the claimant has cited various statutes and also decisions of this and the Supreme Court in support of his contention as to the proper construction to be given to the word “ employed.”
He cites Revised Statutes, section 2733, which authorizes payment to inspectors of customs of $3 per day “ for every day he shall be actually employed.”
That section was construed by the Treasury Department to mean that where an inspector had been assigned to duty and he held.himself in readiness to perform the same he was “to be considered as actually employed ” therefor.
This, we think, was correct, for once assigned to duty and holding himself in readiness to perform he was “ actually employed,” and his per diem compensation began. But that is not the case at bar.
The annual salary of a letter carrier is based on eight hours for a day’s work, during which time he is presumed to be on duty as hereinbefore stated, but no presumption can arise therefrom that he is employed for “ a greater number of hours *243 per day than eight;” hence to be so employed we have seen that he must be “ engaged,” under contract or orders to perform some service consistent with his duties as a letter carrier.
The claimant also cites the case of United States v. Jones (134 U. S., 483), where the court, in construing the third clause, of Eevised Statutes, section 847, concerning the per diem charge of a Circuit Court commissioner for hearing and deciding on criminal charges “ for the time necessarily employed,” held in substance that a hearing and deciding on the sufficiency of bail in a criminal case was time “ necessarily employed,” and so it was, as actual service was rendered, the compensation for which is a per diem fee.
Butin the case at bar no service was rendered, none required, and hence no basis upon which compensation can be made.
We have considered other authorities cited by the claimant in support of his contention as to the proper construction to be given to the word “ employed ” where it appears in various statutes, but we deem it unnecessary to comment on them, except to say that they have no reference to an employment which is made the basis and prerequisite for extra pay.
It is only by reason of the statute enacted in his behalf that a letter carrier is authorized to be employed and paid extra for service in excess of eight hours per day, as without such statute he would not be so entitled. (Mullett v. The United States, 150 U. S., 566.)
Extra pay implies extra service, i. e., service performed in addition to his regular duties.
Any other theory, it seems to us, would be attributing to Congress the folly of having limited a day’s work to eight hours for letter crrriers at a fixed salary therefor, and then increased such salary by providing extra pay for idle time.
While the purpose of the act, as stated in the case of United States v. Post (supra), was “manifestly for the benefit of the carriers,” we apprehend the first and principal benefit to be derived is that for a less number of hours per day than eight a carrier receives the same pay he did theretofore for “a greater number of hours.” Then, to protect him in the benefits thus conferred, as well as to guard against any encroachment upon his time in excess of eight hours per day without further compensation, it is provided that if he be employed *244 “ a greater number of Fours per day than eight ” be shall be paid extra therefor; consequently, to entitle a letter carrier to this extra pay he must be “ employed” by the Government for its benefit and not for his convenience; and we are clearly of the opinion that the word “ employed,” as used in connection with the other language in the act, means “ engaged in active postal duties.”
In reaching the conclusion we have we are not unmindful that in the case of Langston and others, letter carriers of Anniston, Ala., the District Court for the northern district of that State reached a different conclusion, as we are advised by a copy of the findings of fact and conclusion of law thereon» furnished to us by the claimant; but as no opinion accompanies the finding, we are not informed as to the particular grounds upon which the court based its decision.
That case, like the one at bar, involved time of active service in excess of eight hours as well as intervals of one-half hour between tours or swings when no service was performed; but whether the court’s attention was specially called to the intervals of time between tours when no service was rendered, or to the circular of the Postmaster-General in reference thereto, we are'not advised.
It was suggested in argument by counsel for the claimant that in case of doubt this court should follow that decision, and thereby cast upon the defendants the burden of an appeal, in order that the question might be passed upon by the Supreme Court; but we were informed at the same time by the defendants’ counsel that the Langston Case would be appealed.
However, whether the case be appealed or not, the court has reached the conclusion that the claimant in this case is clearly not entitled to recover for the intervals between tours when no service was rendered or required, and that being the case, we have but one duty to perform.
We have not considered the question as to whether the claimant is estopped from a recovery for the time in question by reason of his knowledge at the time of his appointment of the schedule of tours and the circular set out in the findings; nor do we think it necessary to do so, except to say that the language of the circular, “the interim between deliveries is *245 carriers’ own time, and can not in any case be charged against the United States,” was at least notice to the claimant that if during such interim no active service was required, he would not be entitled to extra pay.
Judgment will be entered in the claimant’s favor for $70.71, being for the time engaged in active postal duties in excess of eight hours per day, as set forth in findings II and yi.
As to finding y, where no active postal duties were performed as therein set forth, no recovery can be had.
Howry, J., was appointed after this case was tried, and he took no part in the decision.