Peelle, J.,
delivered the opinion of the court:
The only question presented in this case is, Are the claimants — letter carriers in Charleston, S. 0. — entitled to recover under the Act May 24,1888 (1 Supp. R. S., 587), known as the carriers’ eight-hour law, for services actually rendered by them, and for which the Government received the benefit, in excess of eight hours a day under the circumstances set forth in finding vin, which is as follows:
“The postmaster, after tests under varying conditions both as to service and weather, arranged a carriers’ schedule for the year 1888 and subsequent years, for the purpose of complying with the eight-hour law, i. e., to enable carriers to complete their work within eight hours each day; and if the carriers had not performed any other postal service than that of routing (preparing) the mail for delivery and delivering the same in their respective districts they could have practically completed their service within said time, but in consequence of the lack of sufficient clerical force therefor the carriers, including the claimants herein, performed work in the office distributing the mails and performed other work in excess of eight hours a day, as set forth in the several foregoing findings.
“The service so rendered in excess of eight hours a da.y as hereinbefore found was performed under the circumstances following:
“When the postmaster found that the service could not be performed by the carriers within eight hours for the reasons hereinbefore stated, he was asked by the carriers, through the superintendent thereof, if he had any objections to their coming down in the morning before time, so as to keep ahead and have their work up on time, to which the postmaster gave his consent, and the carriers were informed thereof by the superintendent.
“Nothing was said at the time by the carriers, or by the superintendent in their behalf) or by the postmaster, about or concerning compensation for such overtime, though the postmaster understood that such overtime service would be voluntary and without charge to the Government.
“After the carriers were informed of the postmaster’s consent, as aforesaid, they came to the office the next morning and thereafter ahead of time and assisted in the distribution of the mails, and they were thereby enabled to start on schedule time for the delivery of the mail in their respective districts.
*263 “The postmaster knew that such overtime service was being-performed by the carriers, to which he made no objection, and that it necessarily occupied their time on an average of from two to two and one-half hours a day, but the postmaster forbade them to register or to enter on the books of the office any time in excess of eight hours a day, and in some instances suspended carriers for doing so.
“The carriers continued to distribute the mails as aforesaid until January 1,1895, when the Postmaster-General issued a circular prohibiting carriers from performing clerical work.
“The overtime made by the carriers, as hereinbefore found, the summation of which is set forth in finding vii, was necessary to facilitate the service, and was with the knowledge and consent of the postmaster as aforesaid, and the defendants received the benefit thereof.”
If the claimants are entitled to recover on the facts found, the defendants concede that “the number of hours served by them in excess of eight per day” and the amounts due are correctly stated in finding yii.
The Act May 24,1888 (supra), is as follows:
“That hereafter eight hours shall constitute a day’s work for letter carriers in cities or postal districts connected therewith, for which they shall receive the same pay as is now paid as for a day’s work of a greater number of hours. If any letter carrier is employed a greater number of hours per day than eight, he shall be paid extra for the same in proportion to the salary now fixed by law.”
At the time of the rendition of the services set forth in the findings there was in force the following regulation of the Post-Office Department:
“Sec. 647. Duties generally. — Carriers shall be employed in the delivery and collection of mail matter, and during the intervals between their trips may be employed in the post-office in such manner as the postmaster may direct, but not as clerks.
“The delivery and collection by them must be frequently tested at irregular intervals, to determine their efficiency.”
In the case of The United States v. Post (148 U. S., 124, 132) the court, in construing the above act in connection with the regulation quoted, held in substance that letter carriers were entitled to recover not only “for all work done in the post-office in receiving and arranging the letters of their routes,” but also for “the distribution of mail matter for the boxes and general delivery” during the times intervening between trips *264 on tbe same day, and tbat tbe regulations of tbe Department “could properly be construed as permitting sucb services.”
Tbe court further says:
“Tbe postmaster was tbe agent of tbe United States to direct tbe employment, and if tbe letter carriers bad not obeyed tbe orders of tbe postmaster they could bave been dismissed. They did not lose tbeir legal rights under tbe statute by obeying sucb orders.”
Under tbat decision, therefore, we bold that tbe services rendered by the claimants were not inconsistent with tbeir general business under tbeir employment as letter carriers, and tbat “tbe postmaster was tbe agent of tbe United States to direct tbe employment” for such service.
If tbe services in tbe case at bar bad been rendered by tbe claimants without tbe knowledge or consent of tbe postmaster, they would clearly not be entitled to recover, as in such case tbe Government would not be a party to any contract of employment therefor. But where the postmaster requests or directs sucb service to be performed, or where the carriers ask permission to render sucb service and tbe postmaster consents thereto, nothing being said at the time about compensation therefor, and sucb services are rendered, tbe Government receiving the benefit thereof, as in tbe case at bar, we think tbe carriers were “engaged in active postal duties,” and being so engaged were “employed” within tbe meaning of tbe act.
This was tbe view of the court in the case of King v. United States (32 C. Cls. R., —), where tbe court in this respect said:
“While tbe purpose of tbe act, as stated in tbe case of United States v. Post (supra), was ‘manifestly for tbe benefit of the carriers,’ we apprehend the first and principal benefit to be derived is that for a less number of hours per day than eight a carrier receives tbe same pay be did theretofore for ‘ a greater number of hours.’ Then, to protect him in tbe benefits thus conferred, as well as to guard against any encroachment upon bis time in excess of eight hours per day without further compensation, it is provided tbat if he be employed ‘a greater number of hours per day than eight’ he shall be paid extra therefor; consequently, to entitle a letter carrier to this extra pay be must be ‘employed’ by tbe Government for its benefit and not for bis convenience; and we are clearly of tbe opinion tbat tbe word ‘ employed,’as used in connection with tbe other language in tbe act, means ‘ engaged in active postal duties.’ ”
*265 These services having been rendered by the claimants with the consent of the postmaster, though at their request, the law fixes their compensation5 and it matters not that the postmaster understood such services were to be voluntary and without charge to the Government, or that he forbade the claimants to register overtime.
It appears that notwithstanding the postmaster forbade the claimants to register overtime work, he at the same time permitted them to continue such overtime services on an average, as he knew, of from two to two and one-half hours a day, or more than one-fourth of a day each day in addition to their regular day’s work.
The postmaster was the agent of the Government to direct this service, but he was not the agent to direct such services without compensation to those who performed them, at least without their consent, as the act provides that, “if any letter carrier is employed a greater number of hours per day than eight he shall be paid extra for the same in proportion to the salary now fixed by law.”
lii his efforts to check overtime service by carriers the Postmaster-General has from time to time, since the passage of the act of 1888, promulgated regulations and issued circulars defining the duties of carriers, designating the interims between deliveries as carriers’ own time, not to be charged against the United States; and assigning as a cause for removal, postmasters who may employ carriers in excess of eight hours per day; but as the postmaster is the agent of the United States to direct such employment, and the same is authorized by law, carriers who have been so employed are entitled to recover, notwithstanding such regulations and circular.
By lievised Statutes, section 161—
“The head of each Department is authorized to prescribe regulations, not inconsistent with law, for the government of his Department, the conduct of its officers and clerks, the distribution and performance of its business,, and the custody, use, and preservation of the records, papers, and property appertaining to it.”
Begulations thus promulgated have the force of law (Gratiot v. United States, 4 How., 80; Ex parte Reed, 100 U. S., 13), but they are not the law itself.' Hence where rights, duties, and obligations are defined by statute they can not be taken *266 away or abridged by tbe regulations of an Executive Department. (Campbell v. United States, 107 U. S., 407, 410.)
The purpose of a regulation of an Executive Department is to carry into effect the law in respect to which it may be promulgated.
And as the claims in the case at bar originated under a statute, free from ambiguity, the rights of the parties must be measured and fixed by the statute and not by the regulations.
Under Eevised Statutes, section 3738, constituting eight hours “ a day’s work for all laborers, workmen, and mechanics who may be employed by or on behalf of the Gfovernment of the United States,” the court has held that such statute was “in the nature of a direction by the Government to its agents,’’ and that the Government was not thereby precluded from making’contracts “fixing a different length of time as a day’s work.” (United States v. Martin, 94 U. S., 400.)
Under that act it was also held that if an employee in the public service independently of the act works twelve hours per day and is paid by the day and accepts payment he can not be heard to say that every eight hours constituted a day’s work. (Driscoll v. United States, 13 C. Cls. R., 15.) But a different rule would unquestionably apply under the Act 1888 (supra), as under this act “if any letter carrier is employed a greater number of hours per day than eight he shall be paid extra for the same.”
As to whether a postmaster and a letter carrier could by express contract fix a different length of time for a day’s work, we need not decide, except to say that it could not be done for a less time than eight hours a day, upon which basis his salary is paid.
The claimants, having been “employed a greater number of hours per day than eight,” they are severally entitled to recover the respective amounts found due them — less amounts barred by the statute of limitation, as set forth in finding yu.
Judgments will be entered accordingly in favor of each claimant for the amount due, respectively, as set forth in the conclusion of law.
Howry, J., was appointed after this case was tried, but took no part in the decision.