Peelle, J.,
delivered the opinion of the court:
The claimants, letter carriers in the city of San Francisco, seek to recover extra compensation for services claimed to have been rendered by them in excess of eight hours a day, under the act May 24, 1888 (1 Supp. R-. S., 587), which reads:
“That hereafter eight hours shall constitute a day’s work for letter carriers in cities or postal districts connected therewith, for which they shall receive the same pay as is now paid as for a day’s work of a greater number of hours. If any let ter carrier is employed a greater number of hours per day than eight he sh'all be paid extra for the same in proportion to the salary now fixed by law.”
The facts pertaining to the overtime are not sufficiently found or reported by the commissioner to enable the court to determine as a conclusion of law whether the claimants were “employed” during such overtime within the meaning of the act as construed in the King Case (32 C. Cls. R., 234), but inasmuch as the Assistant Attorney-General concedes that the amount of overtime so reported by the commissioner “shall be *429 accepted as prima facie correct,” and there is nothing to show the contrary, the court will, for the purpose of this case, assume that the findings of the commissioner in respect of such overtime is “prima facie correct.”
At the time of the passage of the act upon which this action is predicated the claimants were performing their respective duties under a schedule for the collection and delivery of mail adopted by the postmaster at San Francisco, and while thus engaged the Postmaster-General issued the circular letter of instruction set forth in the findings.
In conformity with the instructions given, the postmaster prepared a new schedule to go into effect September 5, 1888, whereby the service to be performed by the carriers was not to exceed eight hours per day.
They were not satisfied with the new schedule, because it extended their service over a greater number of hours, and because they could not utilize the intervals between deliveries at their homes or to their advantage and satisfaction otherwise so well as they could under the old schedule, and the/ so informed the assistant postmaster and requested that the old schedule be continued in force, but they were informed by him that under the Postmaster-General’s instructions it could not be done unless they would waive whatever claim they might have to extra pay for work thereunder in excess of eight hours per day.
A meeting of the carriers, claimants herein, followed, and after selecting one of the number to preside, they proceeded to consider the matters involved, and as a result they adopted the following:
u San Francisco, Gal., Sept. 4,188S.
“Whereas we, the letter carriers of the San Francisco post-office, realizing the difficulties in the way of making a schedule time for deliveries aud collections under the new eight (8) hour law, and being aware of the fact that our work under the present schedule does not exceed eight (8) hours, and feeling that the new schedule (recently issued, to go into effect Sept. 5, 1888) will work a hardship on us and will not give as satisfactory a service to the public as the present schedule: Therefore be it
“Resolved, That we do respectfully request Dr.- Wm. J. Bryan, postmaster of San Francisco, Gal., to allow the present schedule to remain in force, we hereby waiving all claim to any pay for overtime that .might appear to be our due.”
Copies of the resolution were sent to the main post-office and *430 to each of the branch offices for the signatures of the carriers, which were voluntarily affixed, in consequence of which the old schedule was continued in force.
Under that state of facts the defendants contend that the claimants voluntarily waived any claim that might otherwise have accrued to them for services rendered in excess of eight hours a day, and that therefore they are estopped from asserting any claim to extra pay for services so rendered.
The claimants’ contention is that the waiver was of official compensation or salary fixed by law, therefore against public policy and void.
Under Eevised Statutes, section 3866, the salary of letter carriers was fixed by the Postmaster-General within the maximum limits there specified, but by the act of January 3, 1887, section 2 (1 Supp. E. S., 519), it was provided:
“That there may be in all cities which contain a population of seventy-five thousand or more three classes of letter carriers, as follows: Carriers of the first class, whose salaries shall be one thousand dollars per annum; of the second class, whose salaries shall be eight hundred dollars per annum, and of the third class, whose salaries shall be six hundred dollars per annum.” . -
As the census reports show that at the time of the passage of the act San Francisco contained, and has ever since, a population of more than 75,000, the act applies to the letter carriers of that city, as well as to all other cities having a like population.
There is no language in the act excepting San Francisco from its operation, and it seems clear to us that Congress intended thereby to repeal section 3866, and we so hold.
That act was followed by the one fixing eight hours as a day’s work for letter carriers and providing that if they be “employed a greater number of hours per day than eight” they “shall be paid extra for the same,” and there can be no question but what this act applies equally to San Francisco with other cities.
The statute cited fixes the annual salaries of letter carriers, and by the act May 24,1888 (supra), their services therefor are based on eight hours for a day’s work, during which period they are presumed to be engaged in postal duties, whether actively so or not, but for any time in excess of eight hours a day they are not entitled to extra pay therefor unless they be “employed” — i. e., “engaged inactive postal duties,” as held in King’s Case (32 C. Cls. R., 234-244) — and they can not be so *431 “employed” without the authority of the postmaster, who is “the agent of the United States to direct the employment,” as held in the case of the United States v. Post (148 U. S. R., 124-133).
The act therefore leaves it to the postmaster, as the agent of the Government, to say whether he will “employ” a carrier to work more than eight hours a day, and if he does so employ him, or if a carrier in good faith performs such postal duties with the knowledge and consent of. the postmaster, a contract of employment therefor will be presumed. {Laurey's Case, 32 C. Cls. R., 259-265.)
Applying the facts found to what we'have said, and particularly in connection with the recital in the preamble to the resolution that the carriers’ “work under the present schedule does not exceed eight hours,” it is by no means clear that the postmaster had any knowledge that they were “engaged in active postal duties” in excess of eight hours a day, much less that he gave his consent thereto.
But for the purpose of this case, and because the overtime reported by the commissioner is conceded to be “prima facie correct,” as before stated, we will assume that such overtime was made by the carriers with the knowledge of the postmaster, and that he permitted the same only because of their written agreement to waive all claim to extra pay therefor.
The resolution was in legal effect an agreement on the part of the carriers signing the same that, in consideration of the postmaster continuing in force the old schedule, they would waive all claim to extra pay for any work they might thereafter do thereunder in excess of eight hours a day.
In the construction of the act June 25,1868 (15 Stat. L., 77), now Revised Statutes, section 3738, providing that “ eight hours shall constitute a day’s work for all laborers, workmen, and mechanics who may be employed by or on behalf of the Government of the United States,” the Supreme Court, in the case of United States v. Martin (94 U. S., 400, affirming decision of this court, 10 C. Cls. R., 276), held that the act was “chiefly as in the nature of a direction from a principal to his agent that eight hours is deemed to be a proper length of time for a day’s labor, and that his contracts shall be based on that theory. It is a matter between the principal and his agent, in which a third party has no interest.” And further, “that contracts fixing or giving a different length of time as the *432 day’s work are legal and binding’ upon the parties making them.” The rule there laid down was applied in AveriWs Case (14 C. Cls. R., 200-204).
But the act fixing eight hours as a day’s work for letter carriers differs from the act thus construed in this, that if a carrier be “ employed a greater number of hours per day than eight he shall be paid extra for the same in proportion to the salary now fixed by law.” So that, as the number of hours constituting a day’s work as well as the salary therefor are both fixed by statute, they are not the subject of contract, hence a postmaster has no authority to increase or diminish either.
Nor has he the authority to employ a carrier to work more than eight hours a day, except as the same may be required by the public service, and when so employed the carrier is entitled to be paid extra therefor as provided by statute, unless he has done some act which estops him therefrom.
As the agreement to waive all claim to extra pay for overtime did not in any way affect the claimants’ salaries, we need not consider the question presented by their counsel in relation thereto further than to say that, conceding that the claimants could not by a written waiver divest themselves of their right to their official salaries fixed by statute, it does not follow that the same rule would apply to extra pay for overtime dependent upon a contract of employment by the postmaster.
In other words, their right to such salaries depends upon their appointment and qualification for the discharge of the duties pertaining to their respective offices, which is wholly a matter of statute; while their right to extra pay for overtime depends upon a contract of employment by the postmaster, which is prerequisite thereto, and, being a matter of contract, they could at the time and as part consideration therefor waive all claim thereto which might otherwise have accrued to them.
It was not only the right but the duty of the postmaster to arrange all schedules for the collection and delivery of mails, and to so arrange them as to conform, to the instructions of the Postmaster-General; and this the findings show he had done, and was on the eve of putting the same into force so that the carriers would thereby have been enabled to perform their postal duties within eight hours each day. But to induce the postmaster to continue in force the old schedule, which was-more advantageous or agreeable to them than the new, they *433 voluntarily agreed in writing to waive all claim to extra pay for any work they might do thereunder in'excess of eight hours a day.
The schedule thus continued in force was subject to be changed to conform to the arrival of mail trains as it had been theretofore, of which the claimants were aware, but such changes did not affect or increase their work thereunder, and in the absence of any showing to the contrary they must be presumed to have contracted with reference thereto.
The parties to the agreement did not thereby contemplate that work in excess of eight hours a day would be necessary under the old schedule. On the contrary, it was recited in the agreement that they were “ aware of the fact that our work under the present (old) schedule does not exceed eight hours” a day.
The claimants were bound to know the law in respect of their rights; but, aside from presumed knowledge of their rights under the statute, they were informed that under the instructions of the Postmaster-General they could not continue work under the old schedule unless they would waive any claim to extra pay that might otherwise accrue to them for overtime; and so when they signed the agreement in consideration that the postmaster would continue in force the old schedule, they thereby intentionally relinquished a known right under the statute, and this they may legally do. (Bishop on Contracts (ed. 1887), sec. 792; White v. Con't. Mutual Life Ins. Co., 4 Dill. (U. S.), 183; Shute v. Thompson, 15 Wall., 151, 159; Tooms v. Rochester, etc., 18 Barb. (N. Y.), 585.)
Bishop on Contracts {supra) lays down the rule thus:
“Waiver is where one in possession of any right, whether conferred by law or contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it. Therefore he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards.”
As the law conferred upon the carriers a personal benefit only in the event of their employment, they could waive the same without injury to others or without affecting the public interest, and, having voluntarily signed the agreement waiving all claim to extra pay for such overtime, they are estopped from asserting any claim thereto, and their several petitions are therefore dismissed.