Howry, J.,
dissenting:
This is in form a motion for the new trial of certain issues heretofore considered and determined, but when examined in connection with the specific assignments of error the motion is to all intents and purposes a petition for the re-arguipent of the cause upon substantially the same record as that offered to the court upon the trial. There is no newly discovered testimony of a competent nature, and the' allegation of surprise does hot appear to come within any of the rules prescribed by law sufficient to entitle the parties to a new trial. Viewing the case, then, exactly as presented at the outset, it should now be considered solely upon the legal effect of the findings as first ascertained and determined.
The schedule under which the services were performed was not arranged upon the principle of laying the carriers off between trips as an eight-hour schedule would have been. The carriers could not utilize the intervals between deliveries at their respective homes or to their advantage and satisfaction elsewhere under the new schedule. There was no official pressure or duress in acceding to their request to continue the old schedule such as to bring the caise within any rule operating to make the .agreement objectionable on that ground. Their act was purely voluntary. Under these circumstances the effect of the resolution and the service under the old schedule was such, in my judgment, as to estop the *605 carriers from claiming any overtime. They were positively told, when urging their interests, that in view of the instructions of the Postmaster-General the old schedule could not be continued unless they would waive whatever claim they might have to compensation for work thereunder in excess of eight hours a day. The old arrangement was continued to avoid the hardships which, the carriers represented, they were desirous of avoiding. The doctrine of estoppel is not favored, but the ends of justice often require that it be enforced. Individuals get the benefit of it, and the Government should have the right to invoke its ápplication in'proper cases precisely as individuals. Having induced the postmaster to do something not only intended for their pecuniary benefit, but which we must assume actually worked out that way, the carriers ought not now to be permitted to repudiate their voluntary act, thus getting, if successful in their contention, the substantial advantages of the old schedule, and in addition the recovery of some $80,000 for overtime work which, but for such agreement, would never have been required.
The new schedule would have been put into operation but for the act of the carriers. In that event the service would have been performed in eight hours of actual service a. day. Thus there could have been no claim for overtime. Having, at their own instance, for their own benefit, induced the defendants to recede from their position of security against payment for overtime services, shall they now be allowed to repudiate the agreement, to violate the contract, to profit by their own wrong, after they have secured all the benefits they desired under the old schedule and when it is now too late to put the defendants in statu quo? I think not.
But suppose, under the-new schedule, the attendance of the carriers would have been secured for more than eight hours each day. In that case the only claim the carriers would have had was the claim for the short swings or intervals between deliveries, which could not be called overtime within the meaning of the statute. (King v. United States, 32 C. Cls. R., 234; Langston v. United States, 85 Fed. Rep., 613.)
According to the fifth finding, it appears that the defendants conceded an amount of overtime under the old schedule *606 as shown by the report of the Commissioner which on that subject was admitted to be merely prima facie correct. But it does not appear that the postmaster directed or consented to any service which involved overtime, or that he had any knowledge of it. It is certain that at the time of the continuance of the old schedule the work did not exceed eight hours of actual service for each day. The resolution stated that, and the postmaster agreed with the knowledge and upon the representation and with the expectation that the carriers would not have any occasion to work in excess of the eight hours. If any proper overtime was made under the operation of the old schedule, the carriers remained silent and again misled the postmaster. Having been silent' when they ought to have spoken they can not now speak when they should be silent.
With knowledge that they were performing labor in excess of eight hours under a schedule which he did not want (but one which the carriers did want), undoubtedly steps would have been taken at once to conform to the instructions of the Postmaster-General. Having prevented the operation of that arrangement, which, if put into execution, would have excluded any claim for overtime, the estoppel to my mind is clear.
But it is said the postmaster had no right in law to stipulate from the carriers a waiver of the compensation fixed by statute for services thereafter to be rendered. I am unable to see why such a waiver could not be accepted as a condition to the consent of the postmaster, and to meet the wishes of the carriers with an old schedule not to put in operation a new schedule under which no claim for overtime could have arisen. The compensation to carriers for overtime services is not salary, and their relations with the United States are contractual. They are employees of the Government and unlike officers whose fees are fixed by statute or whose salary is named. The postmaster was the agent of the United States to direct the employment ■ of the carriers (United States v. Post, 148 U. S. R., 124-133); to employ is to use as an agent or substitute in transacting business, and in respect to a servant or hired laborer is equivalent to hiring, which implies *607 a contract for compensation (McCluskey v. Cromwell, 11 N. Y., 599); letter carriers, are parties to contracts of employment (Laury v. United States, 32 C. Cls. R., 264; Langston v. United States, supra) ; they are engaged under contract ,or orders (King v. United States, supra). The waiver of the carriers at San Francisco was valid (United States v. Martin, 94 U. S. R., 400; United States v. Garlinger, 169 U. S. R., 316). As beneficiaries under a contract the carriers had a right to offer to waive and the Government the right to accept it; as beneficiaries under a statute they should be held to have waived because no principle of public policy can be urged against a waiver induced by their conduct and made solely for their benefit. The statute gives the extra, pay under different conditions.